Good morning, please be seated. We're now calling case number 422059. People of the state of Illinois versus Sanford Marzette, would counsel for the appellant please identify yourself? And for defense? All right, then appellant may proceed. May it please the court, counsel. Good morning, your honors. My name is Ryan Wilson and I represent Sanford Marzette on behalf of the Office of the State Appellate Defender. Sanford was convicted of attempted murder after shooting involving Matthew Lohr. No one at Sanford's defense testified that they saw him at the scene of that shooting. There was no fingerprint evidence or DNA or maybe more importantly gunpowder residue evidence linking him to that offense. Fairly early on in the proceedings in this case, the state noted that identification was going to be circumstantial in this case. And as a result, the state filed a motion asking for leave to introduce other crimes evidence. Evidence involving a robbery that took place at around the same time as Mr. Lohr was shot. The court heard that motion and ultimately allowed a victim of that armed robbery to testify at Sanford's trial. Mr. Marzette has argued that there were various errors committed as a result. And I plan to spend most of my time today discussing argument two of the appellant's brief regarding the other crimes evidence. Before we get to the other crimes evidence, isn't there other evidence of the defendant's presence based on his vehicle, the gun from the shooting found in his vehicle, his behavior when found that night, he had the only key to the vehicle. Isn't there a lot to put him on the premises? There is, from the state's perspective, there's circumstantial evidence that the state has argued links him to this offense. I would submit that there are, based on the evidence that was introduced at trial, there are reasons to doubt the sufficiency of that circumstantial evidence here. What about the shell casings found at the scene of the initial shooting, the underlying crime? Those shell casings match the weapon found in his vehicle. It matches one of the guns that was found in... One of the guns, yeah. Yeah, one was found in his vehicle. The shell casings, well, I guess two things. During Sanford's trial, another man, Mike Juan Sanders, said that he was the one that shot Lohr and that he committed that offense with another person in that person's silver Chevy Cobalt. And when an officer arrived to the scene of the Lohr shooting, he saw a car generally matching that description in the area. He pursued that car. He lost sight of it for about two to five minutes and then found Sanford Marzette's gold-colored car in the driveway of his sister's home. Mike Juan Sanders was kneeling next to that car and Sanford was at the door, banging on the door and asking to be let in. Mike Juan was later found in a garage with another gun that also matched some of the shell casings at the scene. Mike Juan explained that he put that gun in Sanford Marzette's car as he and this other man were fleeing from this officer that was chasing him because he knew that he had shot both guns during the Matthew Lohr assault and that one that he placed in Sanford's car, according to Mike Juan, was the one that he used to shoot Matthew Lohr. And so he was trying to get rid of that gun. This is a bench trial. Correct. Apparently, the trial court didn't place much credence in Mike Juan's testimony. The trial court didn't place a lot of credence in Mike Juan's testimony. There are reasons, however, to question the factors that the court did take into consideration when it issued its judgment convicting of Sanford in the instant case. And some of that overlaps with the circumstances of Mike Juan's testimony. The court did indeed say that it had questions about Mike Juan's testimony, but the court also said that it believed some of it, that it believed that Mike Juan was testifying truthfully about some of it, but other things maybe didn't happen the way that he claimed that they did. Counsel, also, as far as the defendant, when he was found in the home, the officer had observed prior to entering to that home when he was banging on that door that he had a particular jacket on. And when he ultimately goes inside, the defendant is allegedly sleeping, but that jacket is found in the home as well as the key to the vehicle, and he indicates it is his vehicle, correct? That is correct. The car was unlocked, which would have allowed Mike Juan to put this gun in the car. I am not disputing that the officer saw Sanford banging on the door to be let into that home. And wasn't the hood of the vehicle hot to the touch? The officer testified it was, but Sanford had also testified that he had somewhat recently driven that car, so it wouldn't necessarily be unusual for the hood... But he indicated he had been sleeping for a couple of hours. He told the officer that when the officer entered the home. The issue, though, is, and again, I'm not disputing that the officer saw Sanford on the porch of his residence. The issue to me is we all go about life with various perspectives. Now, I might or another person might have the perspective of if a police officer pulls up outside of a house and says, hey, come here, and a guy goes in the house, you might tilt your head and think, well, that seems kind of odd. It's very possible that Sanford had another perspective. It's very possible that he just didn't want to talk to the police. It's very possible that when he saw that officer pull up, he was thinking of Eric Garner or Tamir Rice or Michael Brown and just wanted to get inside and not interact with the officer. I think perspective is really important. But aside from this... How does that perspective fit with saying that, well, I've been in the house for two hours and I've been asleep? It still demonstrates that he doesn't want to interact with that officer. It is him saying, go away, leave me alone. I don't want to be here. Why are you bothering me? I had nothing to do with this. Irrespective of the evidence that we have testimony that was elicited during trial regarding this other crimes evidence, I think, is far more important. And that's for a couple of different reasons. The first reason is People v. Ritchie has said that in purely circumstantial cases, which I believe the state has agreed, this is a case that revolves around circumstantial evidence, the improper admission of other crimes evidence cannot be harmless. That's important here because the state filed this motion asking for this other crimes evidence to be admitted. And when the court granted that motion, the court explained not only that it had heard the proffers made during the hearing on that motion, but also that it had considered an unfiled, unsigned, draft response from Mike Juan Sanders' case, which contained some very bad facts about Sanford. Let me ask a question. Why wasn't there an offer of proof when this was objected to or if it was objected to or something done at the trial court level about this, whatever you call it, because it's not in the record. So we have unable to reference it. It is in the record, your honor. I supplemented. You supplemented. Correct. It was never filed with the court. So the only reason it's part of the record is because of the supplementation. That's correct. But at any rate, what are we supposed to do with that? Well, so I've alleged that this is both plain error and ineffective assistance of counsel. And I'll highlight the plain error argument because as I've set forth in the briefs, there are numerous cases that have said that it is improper for the court to consider evidence from outside of a defendant's case, either when ruling on the guilt of that defendant or when ruling on a pretrial motion, like a motion to suppress. Let's roll it back a little bit and take a fork in the road. If the co-defendant's case had not been resolved and the two defendants were in the case, would it be improper for a court to hear a proffer from both attorneys? And that's what we're talking about here, right? It's a proffer. Well, it is and it isn't. I would argue that it would be a proffer if counsel went to the courtroom and said, Your Honor, as an officer of the court essentially, I am proffering that these are the facts that would come in. That didn't happen here. What if he made the proffer and then decided to plead? Isn't the filing of the document the proffer? Well, this document wasn't filed though, is the issue. But the judge obviously, it seems likely that maybe the judge got a courtesy copy, the case resolved, so it didn't get into the court file. Maybe the intent was to file it on the date of the hearing that never happened for this defendant. But there was an intention there that it was transmitted apparently to the judge. By Mike Juan Sanders' attorney. I get that. This would be a completely different case had Sanford's attorney in any way adopted that pleading. He didn't do that. In fact, we know he didn't do that because he filed an and that response that Sanford's attorney filed left out these bad facts that were present in the one that Mike Juan's attorney circulated. Well, if the trial court is preparing for a hearing for two defendants, isn't that reasonable that she would have already read it? Yeah, it's reasonable that she would have already . . . that you give to jurors that I'm going to disregard this? So the court's presumed to just consider the global aspect of the pleadings that were submitted to it. And I would say in this case, the court had an obligation to only consider the facts that Sanford's attorney put forward. If I can give this court . . . Counsel, one question about that. Because when they discussed the scheduling of that motion hearing, wasn't it defendant's counsel that acknowledged there might be additional information from Sanford's counsel and then the courtesy copies go out and there was no objection when the court indicated if it was the same issue with respect to each defendant that they would conduct a joint hearing on the motion? Wasn't that initially the intent? I don't remember that that was initially the intent because by the time that the court considered this motion in Sanford's case, Mike Juan had already pled guilty. His case had been And I'm just referencing the defendant in July of 2019 when they were there to set that motion for hearing. That was my recollection of the record that it was his counsel that indicated they could move forward with a joint hearing and there was no objection to that. But there ultimately wasn't a joint hearing is the issue. Counsel decided to file his own motion rather than adopting the one that Mike Juan's attorney put forward. And the importance of this motion being considered by the judge and the judge relying on this motion while granting the state's motion in lemonade is essentially one of a series of dominoes that kind of fell in this case. Because once that the state was allowed to introduce this other crime's evidence, they called Tony Thomas at Sanford's trial. The state in its brief has explained that they wanted Tony Thomas' testimony in order to demonstrate that there were two subjects with two guns committing similar crimes within approximately half a mile of each other. Tony Thomas testified for 47 pages. Now the quantity of the pages may not be a very significant factor by themselves. But to kind of quantify that a little bit, Matthew Ward, the victim of the attempted murder, testified at Sanford's trial as did Gary Eibach, one of the and there were two officers. One that was the first officer on the scene of the law shooting and one who apprehended Mike Juan in the garage. Those four witnesses, those four key witnesses testify for 41 pages. During pretrial proceedings, defense counsel was worried that if this other crime's evidence was allowed that this case would turn into essentially a mini trial regarding the armed robbery. And I would submit that's exactly what happened here. Because despite the state's wanting this evidence to prove that there were two suspects with two guns committed committing similar crimes, Tony Thomas testified about the man who approached her side of the car for the robbery searching her bra for things that he could take and reaching into her waist to try and find things. And telling her if you don't look at me I'm going to shoot you or I'm going to shoot nearby houses. Making her get out of the car after she's already said please take everything I don't want anything to do with this. He made her get out of the car and stand there and watch as he searched the car and searched the trunk. The court ultimately when deciding to convict Sanford would talk about the horror of the robbery in this case. It had an impact on the court. This other crime's evidence... An impact greater than according to the victim, the defendant walking up and shooting through the window of a car he hadn't even spoken with yet? So I'm speaking about the judge's specific comments when she elected to convict Sanford. And specifically the judge explained that it may have been simply that the robbers couldn't bring themselves to shoot two women. I don't know what the order is the order of the offenses in this case. None of the victims in this in these cases resisted and Miss Thomas and Miss Tripp were that. But Mr. Lohr was not so lucky if you can call it that. So it's clear from the phone calls that Mr. Merzatt was involved in the armed robbery of Tony Thomas and Lovetta Tripp. Right. I think you're reinforcing my point. It seems that the trial court definitely sees the crime with which defendant is charged as being the more serious offense. The more significant incident. It's not as though what happened earlier was somehow aggravating in the mind of the judge. I think I read the record a little bit differently, Your Honor. The judge... Do you also read the record to include that the bag that was taken out of the other crimes evidence robbery was found in your client's car? So we know that there was a bag found in Sanford's car. The state in this case attempted to link up the bag that was found in Sanford's car with the product of the robbery of Lovetta Tripp. Lovetta Tripp didn't testify at trial. The state didn't know where she was. And so they relied on Tony Thomas to try and introduce evidence establishing that the bag that was found in Sanford's car was the same bag that was taken from Lovetta Tripp. There's a problem with that, however. And the bag is a key piece of evidence. It's arguably the strongest link connecting the armed robbery to the shooting. The state argues that Tony Thomas's testimony was admissible pursuant to 115-10.1c2. In order for evidence to be admissible pursuant to that subsection, there has to be a finding that the person who is testifying has personal knowledge of a fact. The state never asked Tony Thomas, do you have personal knowledge that this is Lovetta Tripp's bag? Because if, as the men are fleeing from the robbery, if Lovetta turns to Tony and says, darn it, they took my Michael Kors bag, that's an admissible hearsay that is not allowed. But what suggestion do you have in the record that there is any indication that she learned that information from Tripp and didn't have personal knowledge? Because it's also possible that she knew it was a Michael Kors bag, personally, having observed it, having it been in the vehicle. Two things. The state, as the proponent of admitting this evidence pursuant to the rule, has the obligation to satisfy that element of the statute. And the state didn't do that here. Justice Steigman, who wrote this statute, wrote an Illinois Law Journal article and essentially said, we're laying this out so clearly with the hope that there's never a question that the state has regarding what evidence it needs to admit in order to satisfy this statute. Well, the state didn't comply with it. It's not Sanford's duty to prove whether or not Tony Thomas had personal knowledge of this. It is the state's burden to satisfy the elements of that statute. Additionally, as to facts in the record, we don't have any facts regarding the backpack, which I would submit is a stronger position for the defense than it is for the state. But what we do know is that at some point, Tony Thomas told officers the amount of money that was taken from Lovetta Tripp's wallet. Now, unless Tony Thomas is opening up, or yeah, Tony Thomas is opening up Lovetta Tripp's wallet and counting the money that's inside, it certainly seems like a reasonable presumption that the two women talked about what was taken in the robbery and that Lovetta Tripp may have said they took $80 or whatever the amount was in the record. It is the state's burden, though, to satisfy the standards for admissibility for evidence like this, and the state didn't do that. Tony Thomas, throughout her testimony, tried to recall events as best as she could. There were 982 days between the date of the robbery in this case and Sanford's trial. And Tony Thomas testified with, I would say, amazing particularity about various factors and things that happened on the date of the robbery. She couldn't remember, though, what the other man that approached the car did. She couldn't remember what the man that spoke with Lovetta Tripp did during the course of the robbery. The state then impeached her with that evidence. The state argued that her failure to remember if she ever knew in the first place what the other man did while he was interacting with somebody completely differently, that that... In the same car. It's not like she couldn't observe that herself. Tony Thomas said that during the robbery, she was completely focused on the man that was standing next to her. He had a gun on her, and she said that she really wasn't paying attention to what was happening with the man who was dealing with Lovetta Tripp. Tony Thomas recalled the evidence in this case as best as she could. She remembered the facts. Okay, I think you're... Oh, I'm sorry. That's okay. I didn't see it. I appreciate it. For the reasons that we've discussed today, I would ask that Sanford-Marzette's convictions are reversed, or alternatively, that the firearm enhancement is vacated. Thank you, Your Honors. May it please the Court. My name is Rob Delaney, a 711 student from the University of Illinois College of Law, representing the people of the state of Illinois. Defendant in this case opted for a bench trial where he presented his own evidence and did not object to the evidence now at issue in this appeal. Defendant now argues that the circuit court acted improperly when it considered all of the evidence before it and found defendant guilty. This court should affirm defendant's conviction for two reasons. First, the circuit court's reasonable conclusion based on the totality of the evidence presented at trial. And second, with respect to the evidentiary challenges, defendant cannot show plain error or ineffective assistance of counsel. With regards to the conviction on the attempted murder charge, defense counsel suggests that Mequon Sanders' testimony should have been given more weight. But in fact, the court did consider that testimony. It considered all of the evidence presented at trial and it had to decide which was the more reasonable conclusion that explained all the facts. The state's theory that there were two shooters with two guns or defense's, defendant's theory, essentially, that this other individual had committed the crime. What's the evidence? We know there's some evidence that there were two guns. What's the evidence that there were two shooters? Your Honor, one crucial piece of evidence is the ballistics evidence, which both parties stipulated to in this case. Ballistics evidence reflects that there were two separate sets of shell casings. One... So that's two guns. What tells us that there were two people? The placement of the shell casings indicates that there were two people. There were four... So if you fired a weapon there, the casings would be somewhere there. And if you stepped over here, the casings would be over there. So why would that tell us there were two people? That's correct, Your Honor. One person could have fired a gun in one place and then moved to another, but that is not what Myquan Sanders testified. Myquan Sanders testified that he was holding both guns and fired them at the same time in the middle of the street. So if that were true, the shell casings would have fallen around the same place. Right. So that's the absence of evidence from Myquan Sanders. What's the presence of evidence that tells us there were two people holding the two different weapons? Well, Your Honor, with regards to the shell casing specifically, the placement does not definitively say that there were two shooters. It is one piece of evidence in the state's case, and that's what's crucial to this opinion. The circuit court was not looking at one piece of evidence. It was looking at the totality. What are the other pieces of evidence that tell us there were two shooters? So another piece of evidence is the witness testimony in this trial. The named victim here, Matthew Lohr, testified that he saw a passenger standing in front of his car. Another individual, Gary Eibach, testified that he saw a Dodge Intrepid, the type of car that was registered to defendant, pull in front of the Neon, and a passenger came out. So the testimony reflects that there were at least two people involved in the shooting, a driver and a passenger. Right. I'm really trying to hone in on the question of what's the evidence that the defendant shot a firearm? Your Honor, another crucial piece of evidence here was that the location of the guns where they were found. So the high-point handgun was found in the driver's door of defendant's vehicle, and it was found in the locked back position. The slide was locked back, indicating that the gun had bullets in the magazine, but it had been emptied. It had been fired. The other gun, a .40 caliber Glock, was found in a residential garage with co-defendant Sanders. So again, all of this evidence together indicates that there were two shooters and two evidence. There was no forensic evidence. However, circumstantial evidence is sufficient for a finding of guilt in this case. But the one witness who was on the porch, Mr. Eibach? Yes. Didn't say there were two shooters. That's correct. He only saw a passenger fire, and he also saw that he, after the first two shots was his testimony at trial, he ducked under a blanket for so the court could not rely definitively on any one piece of evidence. It had to look to witness testimony and ballistics evidence, the physical evidence that was presented at trial, and crucially as well, the other crimes evidence in this case. Tell me about what's your best argument for why this other crimes evidence should come in? Because we know it's prejudicial. The question is, does the prejudice outweigh its value? Why did it come in? It came in because it was relevant, and it was not used for a propensity purpose. It was limited to the scope of identity, opportunity, and proximity, and time and place. It essentially showed the defendant was involved in this other armed robbery that same night within 0.6 miles of the law shooting. So it placed defendant in the vicinity of the law shooting at the time that it occurred. So approximately a little more than a half a mile away. What's the time differential? The time differential, your honor, is best that the record reflects. I would say approximately half an hour either way. The circuit court actually remarked on this that it's unclear the exact sequence of these events. However, they did occur at roughly the same time around midnight, but I would say between 1130 and midnight the night of April 9, 2017. And what this other crimes evidence, why it is relevant, is that it demonstrates this continuing narrative that defendant and Mike Juan Sanders were engaged in a common design to commit armed robberies on that evening. And as a result of that, defendant is liable for any acts committed by members of that group and furtherance of that common design, including the shooting and attempt murder of Matthew Lohr. Counsel, excuse me, how do you address though the issue that's been raised that in essence this became a trial within a trial and that there was substantial testimony provided on this other crimes evidence that that was more than was necessary to establish those limited purposes? Your honor, it's an important aspect of this case is that this was a bench trial. Defendant opted for a bench trial and in that setting there's a presumption that the circuit court will consider evidence for permissible purposes and not for impermissible purposes. Now it's correct, defense counsel, I believe said that Ms. Thomas testified for 47 pages, but during her testimony there was a pause where she was asked to leave the courtroom once she started to make statements that she cannot remember the details of the trial and the court spoke with both parties about how to consider this evidence, how to proceed with her testimony. With respect to the other crimes evidence, it was limited in scope. It was not admitted for any purpose that it could have been. For example, it could have been permitted to demonstrate a common design but it was not. It was limited to these particular aspects that the circuit court felt was relevant. And defense counsel did have an opportunity to challenge that during the pretrial motion on the other crimes evidence. And that's also important in this case because defense counsel is somehow suggesting that the court relied on this responsive motion when it should not have. However, that document was actually mentioned during the motion for the other crimes evidence by defense counsel. So defense counsel invoked that document in that argument. And as this court stated a few minutes ago, the only reason this has sort of become an issue is because the co-defendant happened to plead guilty and so the document was never filed with the court. However, if those two cases had proceeded, there seemingly would be no issue with the court having access to responsive motions from separate counsel. There might still be an issue if it wasn't admitted, made part of the record. Yes, your honor, that's correct. And that's key. The issue essentially is that the challenge is that the circuit court somehow looked outside of the record here. That did not happen at the pretrial proceeding precisely because defense counsel himself invoked it during that proceeding. It did not happen during the final ruling because the circuit court was very clear the bases that it ruled on. And for that reason, I would suggest that I believe it's pages 669 to 679 of the record, the explanation of the finding of guilt, are the most critical part of this case. It's critical to consider how the court used this other crimes evidence. Let me ask a question. I mentioned it and you have mentioned it several times. Give me a declarative sentence about why it makes a difference that this was a bench trial rather than a jury trial in regard to the other crimes evidence. In regard to the other crimes evidence, it makes a difference because if this had been a jury trial instead of a bench trial, it's possible that the court would not have allowed certain statements to come in that did actually come in. For example, following the other crimes hearing, before a defendant opted for a bench trial, the court said she did not want the phrase armed robbery used during trial because it might prejudice the jury. However, once this became a bench trial, I do believe, I'm not 100 percent certain, but I do believe the phrase armed robbery was used during trial proceedings. And the difference here is that the judge would have known not to consider that, not to base her ruling on that. So other crimes evidence should be viewed by us differently because this is a bench trial rather than a jury trial. Is that your indication? Your Honor, not necessarily. I think the question as to whether the court or the jury based its ruling on a propensity purpose with respect to the other crimes evidence should be the same. However, the difference is the standard and there is a presumption that the court will consider evidence only for non-propensity purposes. And to overcome that presumption, that's why I believe the judge's finding of guilt is crucial because it explains what she based her evidence on and what she did not. Do the judge's comments concerning the experience trip and the other woman, do those indicate she is considering it for propensity reasons? Your Honor, I don't believe they do. She's certainly commenting on those victims must have felt. However, what she said on page 678 is that if a defendant was involved in one incident here, the armed robbery, then he was involved in the murder and then because of the chain of events as described in this trial, the evidence that was found in his car and the ballistics evidence that was received. So she's not considering the other crimes evidence for a propensity purpose but looking at it in context of the evidence in this case. And about the evidence that was in defendant's car, it's true that the Michael Kors bag was found in defendant's vehicle and the state does believe that the statements about that bag are admissible in this case. However, it is not the only link between the other crimes evidence and the defendant's involvement in the law shooting. So another proceed of the crime was Ms. Thomas's cell phone, which was found in the Auburn Manor complex dumpster and that is precisely where Officer Schneider at 12 29 a.m. saw a defendant's vehicle pulling out of that Auburn Manor complex and then engaged in a high-speed pursuit with defendant's vehicle eventually stopping at his home and that court noted defendant's car was hot to the touch indicating that yes this was defendant's vehicle, yes he was driving it, he was seen on the porch entering the house and then when he was arrested the keys were within arm's reach. So there's a direct chain of evidence linking defendant from the scene of the shooting and incidentally to that cell phone from the other crimes directly back to the house where he was arrested. Yes. I would like to circle back just because we're limited on time to Justice Dougherty's prior question though. As far as the personal discharge of the firearm, the defendant has asserted that there was no evidence showing that he actually personally discharged that firearm such that the enhancement should have been imposed. What is the evidence that he did and I know Justice Dougherty touched on this but I guess I'd like to ask that question very poignantly. Yes your honor the judge did address that in her record and I believe it was a combination of the ballistics evidence, the witness testimony and the other crimes evidence which again suggested that there were two individuals engaged in this other robbery each armed with a gun and there is certainly no definitive evidence, no eyewitness that saw the defendant in this case fire the weapon. However the judge concluded that the totality of the evidence here meaning the ballistics, witness testimony and other crimes supported a finding that there were two shooters and two guns. And I think it's important also that the judge did not conclude that there was enough evidence to impose the harsher sentencing enhancement that defendant fired a weapon that probably caused harm to the victim in this case. So again that simply demonstrates that the judge was considering this evidence carefully for the contentions that it could support and could not support. And I think defendant's own actions following his arrest which defense counsel have not mentioned also demonstrate that he was conscious of his involvement in these acts and I'm referring here to the jail calls which were the subject of the second motion in limine. Defendant was essentially asking his girlfriend to not obtain but to draft an affidavit and to pay Ms. Thomas to sign it or to do whatever she had to do in order to get Ms. Thomas to sign the statement saying that she was not the victim or rather the defendant was not the robber in the other crimes incident. And that kind of request is not or simply indicates that defendant was aware that he had been involved in this other crimes incident. Well and your honor another point I'd like to touch on I suppose in relation to that is simply that the defense counsel's argument here is essentially that each piece of evidence should not have been omitted. It's sort of trying to attack each piece of evidence individually here but what the court was looking at was this evidence as a whole and the court felt that it was sufficient to support the finding of guilt. Another issue that defense counsel raises is the failure to call additional witnesses who theoretically would have provided some sort of exculpatory testimony on defendant's behalf. However those additional witnesses again were the only place I believe they're mentioned in the record is in the other crimes evidence motion and also in the responsive motion from defendants. So there's sort of an inconsistent argument here that these witnesses are coming up as a result of this responsive motion but at the same time the responsive motion should not be considered. That's more of a side point but as to these they were on the scene. I'm referring here to Mr. Price, Hargibook and Scott who was actually in the vehicle with Mr. Lohr. They would have testified they were on the scene that it was a dark night and they simply could not identify defendant in a show-up following the incident. So it's again an absence of evidence not a dispositive sort of a piece of evidence that exculpates defendant from involvement in this crime. In fact defendant's story was that he was outside his porch while all these incidents were occurring. However he presented no witnesses who could have verified that version of events. And in addition one thing that is possible about Mr. Scott is that who is the other person in the car is that he may very well have testified that because of his vantage point being in the vehicle, he could have seen more than one person potentially with more than one gun. So this was a strategic decision made by defense counsel not to call additional witnesses who merely would have provided duplicative testimony and even potentially damaging testimony. And another point that defense counsel mentioned here with regards to the brain of the bag and the personal knowledge question. This court, the fourth district, noted in People vs. Speed that when dealing with the statute 115-10.1 the question of personal knowledge should be determined based on the face of the statement itself. And the face of the statement that Ms. Thomas gave to police was that she was out that night with Ms. Tripp and it's perfectly reasonable that she would have observed the bag during the course of that interaction. But again even if that bag were not to come in, there's the cell phone linking defendant to the other crimes incident, there's the sequence of events itself where there was a vehicle identified at the scene that was followed by police to defendant's house. And your honor for all these reasons the state's position is that this court should affirm. Thank you. Thank you counsel. I have just a couple very quick points and then I want to talk about a couple of the substantive issues that the counsel mentioned. He began his argument by noting that defense counsel didn't object to any of the evidence that he is now challenging. That is not correct. Defense counsel objected and preserved the objection to the other crimes evidence and to the jail calls that counsel mentioned. There also is no evidence beyond a reasonable doubt that Sanford was responsible for discharging a firearm. Again no gunshot residue evidence, no one testified that they saw him outside of the car shooting this gun and as Justice Doherty you mentioned just because the shell casings are located in different places doesn't mean there have to be two people. In fact again Mike Juan Sanders said that he shot into Orr's car as he approached that car. Regarding the the jail calls, counsel talks about the the admission of the calls as evidence that should be considered in this case. The state has argued that the jail calls were admissible as forfeiture by wrongdoing. In order for those jail calls to be admissible and I should note jail calls involve the armed robbery. They don't involve the attempted murder here. He wasn't charged with the murder right at the time he was in jail for the for the robbery. That's absolutely correct and that was where where I was going with this. You cannot make an argument that Sanford was somehow trying to prevent Tony Thomas from testifying at his trial for attempted murder when he hadn't been even charged with that offense yet. Okay but does that link have to exist? I mean if you are trying to wrongfully stop a witness from testifying at one trial is it the forfeiture only apply to that trial and not for another one? My understanding is that it is the forfeiture by wrongdoing doctrine invokes a somewhat specific intent type of analysis where it is the proponent's obligation the proponent who wants the calls admitted to establish that the defendant is doing that specifically for the purpose of preventing the witness from testifying. That was not done here. He clearly was asking his girlfriend just to talk to Miss Thomas to see if she would dismiss the charges here. There was nothing ever mentioned about prohibiting her from testifying at a trial whether it's the armed robbery or whether it is the attempted murder that wasn't even charged. That slices it pretty thin. Is there any authority that says that the forfeiture by wrongdoing relates only to the case under discussion? I'm not aware of any but the forfeiture by wrongdoing does say that it has to the the statements by the defendant have to be made with a specific intent to prevent the witness from testifying. And I think isn't the inference here that it was with a specific intent to have her not testify in the armed robbery case? I disagree. I think it was with the specific intent to get her to dismiss the charges. These calls were made very shortly after Sanford was charged in this case. So it was very early on in the case. I obviously don't have the record from that case but I would just doing this for as long as I have done it I would suspect that probably wasn't even a trial date set. So no there wasn't sufficient evidence to show that Sanford had a specific intent to prohibit Thomas from testifying at trial. Before we run out of time what do you do with the fact that the trial court made the specific finding that there were two shooters? She weighed the evidence and concluded that the evidence was sufficient to show that there were two shooters and that's a critical part of the defense case and the prosecution's case. What do you do with that? Well one I'll note there is no evidence of that that was admitted at trial. Well I understand that but the trial court apparently gleaned that there was sufficient evidence to make that finding. And that kind of gets me to the to the other point that the counsel made during his argument. The fact that this is a bench trial doesn't somehow change the evidentiary standards that should apply to a defendant. A defendant is entitled to a fair trial and while fairness is a very ambiguous concept we can look at what is inherently unfair as has been set forth by the cases saying when evidence is and is not admissible. Here there was no evidence and I understand your point Justice Kinnick that the judge found that there were two shooters but there's no evidence bearing that out. We see this somewhat frequently both in bench trials and jury trials where we argue that there wasn't sufficient evidence that the state failed to to meet their burden of proving an element beyond a reasonable doubt and the state failed here in this case. All right counsel I think your time is up. Thank you your honor. I would ask that Sanford-Marzette's convictions be reversed or alternatively that the firearm enhancement would be vacated. Thank you. All right thank you. Court will now stand in adjournment and issue a decision in due course.